Richard **HARDIMAN**, Petitioner–
Appellant,

v.

Dan M. **REYNOLDS**, Warden; and Attorney General of the State of Oklahoma, Respondents–Appellees.

No. 91–6337.

United States Court of Appeals, Tenth Circuit.

July 20, 1992.

Richard Hardiman, pro. se.

Susan Brimer Loving, Atty. Gen., and Steven Spears Kerr, Asst. Atty. Gen., Oklahoma City, Okl., for respondents-appellees.

Before EBEL, Circuit Judge, BARRETT, Senior Circuit Judge, and PARKER, District Judge.*

EBEL, Circuit Judge.

This is an appeal from a dismissal of a habeas corpus petition under 28 U.S.C. § 2254 on the ground of state procedural default. We hold that the defense of state procedural default may be raised sua sponte so long as the court provides the petitioner an opportunity to respond to the defense.[1] We also hold that defense counsel may, under some circumstances, have a constitutional duty to discuss the merits of appeal with a criminal defendant even though the defendant has pled guilty. Because the Petitioner at bar has alleged facts that, if proven, could establish a violation of this constitutional right to counsel, and because ineffective assistance of counsel may excuse a state procedural default under the cause and prejudice test of *Coleman v. Thompson*, —— U.S. ——, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991), we hold that the district court erred by dismissing the petition without affording the Petition-

---

* The Honorable James A. Parker, United States District Judge for the District of New Mexico, sitting by designation.

1. In *Hines v. United States*, 971 F.2d 506, a case issued contemporaneously with this one, we dis-

cuss the propriety of sua sponte review of the *Frady* defense to a motion under 28 U.S.C. § 2255.

er an opportunity to show cause for his procedural default. Accordingly, we reverse and remand.[2]

## FACTS

The Petitioner, Richard Hardiman, seeks habeas relief based upon the alleged unconstitutionality of a 1978 Oklahoma conviction that was used to enhance a sentence he is presently serving for a 1987 Oklahoma conviction.[3] Hardiman challenges his 1978 conviction on two grounds: First, he alleges that the guilty plea upon which that conviction was based was involuntary. He asserts that when he expressed reservations about whether to plead guilty, his court-appointed attorney threatened to quit and told him that the prosecutor had threatened to give Hardiman a life sentence if he chose to proceed to trial. Second, Hardiman alleges that he was inadequately advised of his right to appeal because he was not informed that his appeal, including counsel and record on appeal, would be free if he could not afford it. The State has stipulated that Hardiman has exhausted these two claims in state habeas corpus proceedings and the record supports the stipulation.

The magistrate did not address the merits of Hardiman's petition, but instead recommended denial of the petition on the ground of state procedural default. This recommendation was based upon the fact that Hardiman did not file a timely direct appeal from his 1978 conviction. Oklahoma in most situations precludes a prisoner from raising on collateral attack an issue that could have been, but was not, raised on direct appeal. *See Webb v. State*, 661 P.2d 904, 905 (Okla.Crim.App.), *cert. denied*, 461 U.S. 959, 103 S.Ct. 2434, 77 L.Ed.2d 1319 (1983). Because the magistrate concluded that Hardiman did not satisfy *Coleman*'s cause and prejudice test to excuse the state procedural bar, the magistrate recommended that Hardiman's petition be dismissed. The district court adopted the magistrate's recommendation and dismissed Hardiman's petition on the ground of state procedural bar.

The State had not raised this issue before either the magistrate or the district court. Rather, the magistrate raised the issue of state procedural default sua sponte. On appeal, Hardiman argues that the district court erred by raising state procedural default sua sponte. Further, he argues that even if state procedural default were properly raised, his default is excusable under *Coleman*'s cause and prejudice test. We address each of these arguments in turn.

### I. A Court May Raise State Procedural Default Sua Sponte in a Section 2254 Action

Generally, where the parties have not raised a defense, the court should not address the defense sua sponte. "The rule that points not argued will not be considered is more than just a prudential rule of convenience; its observance, at least in the vast majority of cases, distinguishes our adversary system of justice from the inquisitorial one." *United States v. Burke*, — U.S. —, 112 S.Ct. 1867, 1877, 119 L.Ed.2d 34 (1992) (Scalia, J., concurring) (citation omitted).

However, this general rule contains at least two important exceptions. First, a court must raise a defense sua sponte if that defense implicates the court's subject matter jurisdiction. *See Tuck v. United Servs. Auto. Ass'n*, 859 F.2d 842, 844 (10th Cir.1988), *cert. denied*, 489 U.S. 1080, 109 S.Ct. 1534, 103 L.Ed.2d 839 (1989). Second, as noted by the Third Circuit, where a "doctrine implicates [nonjurisdictional] values that may transcend the concerns of the parties to an action, it is not inappropriate for the court, on its own motion, to invoke

---

**2.** Because we believe that Hardiman's appeal is not frivolous and is pursued in good faith, we GRANT his motions for a certificate of probable cause and to proceed in forma pauperis.

**3.** It is undisputed that the 1978 conviction was used to enhance the sentence for the 1987 conviction. Accordingly, we have jurisdiction to

review the constitutionality of Hardiman's 1978 conviction notwithstanding the fact that he is no longer serving a sentence based directly upon that conviction. *See Gamble v. Parsons*, 898 F.2d 117, 118 (10th Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 212, 112 L.Ed.2d 172 (1990).

the doctrine." *Brown v. Fauver,* 819 F.2d 395, 398 (3d Cir.1987);[4] *cf.* Ernest H. Schopler, Annotation, *What Issues Will the Supreme Court Consider, Though Not, or Not Properly, Raised by the Parties,* 42 L.Ed.2d 946, § 12 (1976) (Questions of importance and public concern).

■ In a § 2254 habeas action, state procedural default is not a jurisdictional defense. *See Reed v. Ross,* 468 U.S. 1, 9, 104 S.Ct. 2901, 2906–07, 82 L.Ed.2d 1 (1984) ("Our decisions have uniformly acknowledged that federal courts are empowered under 28 U.S.C. § 2254 to look beyond a state procedural forfeiture and entertain a state prisoner's contention that his constitutional rights have been violated"); *Wainwright v. Sykes,* 433 U.S. 72, 83, 97 S.Ct. 2497, 2504–05, 53 L.Ed.2d 594 (1977) (state procedural bar defense to habeas corpus action is "a matter of comity but not of federal power"); *see also Jenkins v. Anderson,* 447 U.S. 231, 234 n. 1, 100 S.Ct. 2124, 2127, 65 L.Ed.2d 86 (1980) (deeming state procedural default defense waived); *Hernandez v. Rayl,* 944 F.2d 794, 795 (10th Cir.1991) (same); *Bailey v. Cowley,* 914 F.2d 1438, 1439 (10th Cir.1990) (per curiam) (same).

■ However, the state procedural default doctrine substantially implicates important values that transcend the concerns of the parties to an action. The doctrine is grounded upon concerns of comity between sovereigns and often upon considerations of judicial efficiency. *See Sykes,* 433 U.S. at 83, 97 S.Ct. at 2504–05 (state procedural bar rule is "a matter of comity"); *id.* at 88–89, 97 S.Ct. at 2507–08 (state procedural bar at issue in *Sykes,* the contemporaneous objection rule, serves the interest of finality and forces the issues to be considered when they are freshest and when the state's resources have been marshalled to address them). Because these concerns substantially implicate important interests beyond those of the parties, it is not exclusively within the parties' control to decide whether such a defense should be raised or waived. *Cf. Smith v. Moffett,* 947 F.2d 442, 445 (10th Cir.1991) (holding, in a case involving the nonexhaustion defense, that "we have discretion to raise comity issues sua sponte").

Comity affects federal as well as state interests. As noted by the Eleventh Circuit,

> Comity is not a one way street. "The notion of comity ... must be understood not as a capitulation of federal power to state interest; rather, comity involves a delicate compromise of both state and federal concerns." *Carter v. Estelle,* 677 F.2d 427, 442 (5th Cir.1982). Strong federal interests may exist that, balanced against those of the state in the particular case, will permit the district court in its discretion to decline a waiver [of a comity-based defense]....

*Thompson v. Wainwright,* 714 F.2d 1495, 1509 (11th Cir.1983), *cert. denied,* 466 U.S. 962, 104 S.Ct. 2180, 80 L.Ed.2d 562 (1984). Thus, even if the state as a party chooses not to assert its interests, a court may consider federal interests in comity.

Moreover, comity interests aside, federal courts have an interest in the procedural default defense because it affects the expenditure of scarce federal judicial resources. Unless the state procedural bar defense can be raised sua sponte, a state that fails to raise that defense can effectively force a federal court to review the merits of a case that may be simpler to decide on procedural grounds.[5]

---

4. *Brown* involved a nonexhaustion defense, not the state procedural bar defense. Although we recognize important differences between these two defenses, the test elaborated in *Brown*—i.e., does the defense substantially implicate important values that transcend those of the parties— also applies to the state procedural bar defense.

   Moreover, as we discuss in more detail below, the nonexhaustion defense, like the procedural default defense, involves considerations of comity. For this reason, we occasionally look to discussions of comity in cases dealing with the nonexhaustion defense.

5. Although a federal court may sometimes be able to conserve its resources by disposing of a case on the ground of state procedural default, procedural disposition will not always be the most efficient course. For example, where the existence of the default or its justification under *Coleman's* cause and prejudice test is not clear from the record, it may be an inefficient use of resources to engage in a sua sponte search for a

Finally, society has an efficiency interest in the state procedural bar at issue in this case: Oklahoma's direct appeal requirement. This procedural requirement encourages efficiency by channeling disputes to the best forum for their resolution. Direct appeal permits the state appeals courts to review the case while the record is fresh. By enforcing procedural rules that channel issues to the appropriate forum, efficiency is encouraged.

At least one circuit has explicitly held that a court can raise the issue of state procedural default sua sponte. *See Hull v. Freeman,* 932 F.2d 159, 164 & n. 4 (3d Cir.1991). We are aware of no circuit that has adopted a contrary approach.

Our holding also finds support in *Granberry v. Greer,* 481 U.S. 129, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1987). *Granberry* stated that a federal court of appeals has the power to consider a nonexhaustion defense in a section 2254 habeas action notwithstanding that the state did not raise the defense until the case was on appeal. *Id.* at 133, 107 S.Ct. at 1674–75. The Court allowed the belated consideration of the nonexhaustion defense because it was predicated upon considerations of comity and judicial efficiency. *See id.* at 135, 107 S.Ct. at 1675–76. As we discussed above, the state procedural bar defense implicates substantially similar considerations.[6]

The district court's ability to raise a defense to a § 2254 motion sua sponte is also consistent with the authority that the Rules Governing Section 2254 Cases in the United States District Courts give to the district courts. Specifically, Rule 4 provides: "If it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the petitioner to be notified." This rule empowers the court to dismiss meritless petitions on its own without requiring any action by the government. Regardless of whether the conditions for sua sponte action under Rule 4 are satisfied here,[7] that rule indicates that Congress intended the courts to play a more active role in § 2254 cases than they generally play in many other kinds of cases.

*Bailey v. Cowley,* 914 F.2d 1438, 1439 (10th Cir.1990) (per curiam), and *Hernandez v. Rayl,* 944 F.2d 794, 795 (10th Cir. 1991), are not to the contrary. In both of those cases we deemed the defense of state procedural bar waived when the state did not raise that defense in the district court or on appeal. However, our holding that we have the power to deem an unraised defense waived is far from tantamount to holding that the district court or the court of appeals cannot raise that defense sua sponte when issues of comity, judicial efficiency, and the like suggest to the court that it should not reach the merits of the habeas claim. We hold here only that a court *may* raise the state procedural bar defense sua sponte, not that it *must* raise such a defense if the parties fail to raise it on their own. Indeed, as we stressed

state procedural default. *See Batchelor v. Cupp,* 693 F.2d 859, 864 (9th Cir.1982) ("These questions, when raised in the district court, are almost always more complicated and time consuming than are the merits of the petitioner's federal claim."), *cert. denied,* 463 U.S. 1212, 103 S.Ct. 3547, 77 L.Ed.2d 1395 (1983). Similarly, *sua sponte* consideration of a state procedural default might be inefficient where substantial resources have already been spent litigating the merits of a petition or where the defaulted issue is recurring. Of course, if the state does raise the defense of procedural default, it is entitled to a determination on that defense irrespective of these considerations.

**6.** The fact that *Granberry* dealt with a belatedly raised defense as opposed to a defense that was not raised at all does not destroy the analogy.

The question remains similar in both cases: Is the defense sufficiently important to warrant consideration even though the government failed properly to raise it?

Nor does the fact that *Granberry* dealt with the ability of an appeals court, as opposed to a district court, to address an improperly raised defense affect the analogy. If an appeals court has the power to address an improperly raised defense, then surely a district court has this power.

**7.** It is not clear that Rule 4 would justify sua sponte review of a defense *after* the Government responds and fails to raise the defense, as occurred here. Also, it is not clear in the case at bar whether the defense "plainly appear[ed] from the face of the petition."

above, in an adversarial system such as ours, it will generally be better to consider only those defenses that are properly raised by the parties. We merely recognize here the court's power to raise the state procedural bar defense sua sponte when, within its discretion, the court deems it appropriate to do so.

## II. *Cause and Prejudice*

■ The district court dismissed Hardiman's petition upon adoption of the magistrate's conclusion that Hardiman did not show cause for his state procedural default as required by *Coleman.* Prior to dismissing an action sua sponte, a court must give the complainant an opportunity to respond to the argument for dismissal. *Wilson v. United States,* 433 F.2d 597, 598 (10th Cir. 1970) (per curiam), (citing *Cooper v. United States,* 433 F.2d 596 (10th Cir.1970) (per curiam)). Nothing in this record suggests that Hardiman was given an adequate opportunity to respond to the state procedural bar issue after it was raised sua sponte. Therefore, we reverse.

■ Hardiman failed to object to the magistrate's Findings and Recommendations and this failure was referenced by the district court as one basis for affirming the magistrate's recommendation. However, reliance upon Hardiman's failure to object was error. We have made it very clear that a pro se petitioner's failure to object to a magistrate's report cannot constitute a waiver of the right to object to that report unless the magistrate makes clear on the face of the report the consequences of such a failure to object. *Moore v. United States,* 950 F.2d 656, 659 (10th Cir.1991).

Here, the magistrate's report does not contain any notice of the consequences of a failure to object. Because Hardiman is a pro se petitioner, his failure to object cannot be deemed a waiver.[8]

■ Some courts have held, at least in the context of a sua sponte dismissal under Federal Rule of Civil Procedure 12(b)(1), that if an opportunity to respond would be futile, a court need not provide such an opportunity before dismissing the petition. *See* Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1350, at 217–18 (1990). The magistrate's failure to permit Hardiman to respond appears to rest upon the conclusion that a response would be futile—i.e., that Hardiman could not show cause under *Coleman*'s cause and prejudice standard. We disagree.

The magistrate's conclusion that Hardiman could not show cause was based upon his finding that Hardiman "was advised of the proper procedure for appealing [his] conviction." Findings and Recommendations at 6. However, this finding misses the point. Hardiman does not contend that he should have been advised of the proper procedure for appealing; rather, he contends that he should have been advised that he could avail himself of that procedure *without payment.* Thus, the question is whether the failure to advise Hardiman of his right to a free appeal might constitute cause. The record is inadequate for us to conclude that this argument is futile.

■ Constitutionally ineffective assistance of counsel constitutes cause. *See Coleman,* 111 S.Ct. at 2567.[9] We have held that counsel is constitutionally ineffec-

8. Because we decide this waiver issue on the basis of the magistrate's failure to notify a pro se litigant of the consequences of a failure to object, we do not address whether Hardiman's explicit excuses for his failure to object—that he had been transferred to another prison and that his legal materials had been confiscated—might justify his failure to object under the "interests of justice" standard noted in *Moore. Id.*

9. Hardiman does not clearly assert that it was the duty of his counsel to notify him of his appeal rights. Rather, he argues that under Oklahoma law the court should have notified him of these rights. *See Buchanan v. Page,* 451

P.2d 17, 18–19 (Okla.Crim.App.1969) (per curiam). In a federal habeas corpus case, we look only to whether a federal right was violated. 28 U.S.C. § 2254(a). Accordingly, we do not consider this state law argument further. However, we read Hardiman's pro se petition liberally to assert a claim for ineffective assistance of counsel. *See Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir.1991) ("[I]f the court can reasonably read [pro se] pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's ... confusion of various legal theories....").

tive where counsel "never advised [the defendant] of the pros and cons of appealing his conviction, and did not ascertain whether [the defendant] wanted to appeal." *Baker v. Kaiser,* 929 F.2d 1495, 1499–1500 (10th Cir.1991). Merely advising a defendant of his right to appeal is "insufficient to satisfy the right to counsel." *Id.* at 1499. Thus, if, as Hardiman alleges, he was not informed of his right to a free appeal, he may be able to show cause for his procedural default under *Coleman.*[10]

The State attempts to distinguish *Baker* on the ground that there is no indication that the defendant in *Baker* pled guilty. Hardiman, in contrast, pled guilty. "An attorney has no absolute duty in every case to advise a defendant of his limited right to appeal after a guilty plea." *Laycock v. New Mexico,* 880 F.2d 1184, 1187–88 (10th Cir.1989) (citations omitted). If Hardiman was not entitled to notice of his right to appeal, the State argues, then he could hardly be entitled to the right to notice that an appeal would be free or that he would be entitled to a free attorney and record on appeal.

Although it is generally true that a criminal defendant has no right to notice of his right to appeal a guilty plea, *Laycock* notes two important exceptions to this rule: "If a claim of error is made on constitutional grounds, which could result in setting aside the plea, or if the defendant inquires about an appeal right, counsel has a duty to inform [a defendant of his right to appeal]." *Id.* at 1188 (citation omitted). This duty arises when "counsel either knows or should have learned of his client's claim or of the relevant facts giving rise to that claim." *See Marrow v. United States,* 772 F.2d 525, 529 (9th Cir.1985) (cited by *Laycock,* 880 F.2d at 1188).

Hardiman's petition alleges that his counsel took part in coercing him to plead guilty. If Hardiman can prove this allegation, he may well be able to satisfy *Laycock's* test for when a defendant who

pleads guilty is entitled to advice about appeal. If he can show that he was not given such advice, then he may be able to show cause under *Baker* and *Coleman.* Thus, the magistrate's apparent conclusion that it would be futile to let Hardiman attempt to show cause was erroneous.

Accordingly, we REVERSE the district court's dismissal of Hardiman's petition and REMAND for the district court to provide Hardiman an opportunity to show cause under *Coleman* for his procedural default.

---

10. We do not decide here whether counsel's alleged failure to discuss the financial aspects of the appeal constitutes a failure to advise a defendant about "the pros and cons of appealing." *Baker,* 929 F.2d at 1499–1500. We merely hold

that, given that this is an open question, Hardiman might be able to show cause. That is, it would not be futile to allow him the opportunity to do so and he should be given the opportunity to develop further the record on this issue.